**Gary Acceptance Corporation, a Corporation, Plaintiff-Appellee, v. John Napilillo and Eunice Napilillo, Defendants-Appellants.**

**Gen. No. M–51,422.**

First District, Third Division.

August 24, 1967.

Rehearing denied September 21, 1967.

Philip G. Bixler and Hector A. Brouillet, of Chicago (Philip G. Bixler, of counsel), for appellants.

Philip S. Aimen and Morris Topol, of Chicago, for appellee.

 

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order denying the defendants' petition under section 72 of the Civil Practice Act to vacate a default judgment entered against them.

Defendants, husband and wife, had given their note to the plaintiff for money borrowed in the sum of $3,300. The note was secured by a chattel mortgage on defendants' station wagon and by a second mortgage on their home. Defendants paid $570 on the loan and on May 14, 1964, they filed a petition in bankruptcy. The plaintiff on default by defendants repossessed the station wagon and resold it for $1,600, leaving a maximum unpaid balance of $1,130 plus interest. Defendants scheduled the debt in the bankruptcy proceedings and were discharged therein on July 10, 1964. The first mortgage on defendants' home was foreclosed by the mortgagee.

On August 7, 1964, the plaintiff brought an action in detinue against the defendants and in its complaint charged that the defendants were *detaining* "All household furniture, furnishings, radios, television sets and home appliances located in the residence at 5102 W. 63rd Place, Chicago, Illinois," and asked for the return of the property or its value in the amount of $3,898.08 and damages for its detention on the inescapable presumption that it was the plaintiff's property which was being detained. Nowhere, however, has the plaintiff made such a claim specifically nor has it denied the defendants' claim that these household goods belonged to them, were scheduled as such in the bankruptcy proceeding and allowed as their personal exemption.

On August 17, 1964, the defendants were served with summons and telephoned their attorney who advised them to ignore the summons. As a result they did not file a defense nor did they appear for trial, and on October 13, 1964, the default judgment was entered order-

ing the restoration (sic) of the property described in the plaintiff's complaint or payment of the value thereof in the amount of $3898.08 plus damages of one cent and costs.

On November 25, 1964, a detinue execution was issued commanding the bailiff to restore the property described in the plaintiff's complaint to the plaintiff or if the property could not be found, commanding him to cause to be made of the defendants' other property the sum of $3,898.08. This was approximately $600 in excess of the debt, with no credit for any payments made. The execution was returned unsatisfied. Thereafter a citation summons was issued, directed against the defendants, which was returned on September 14, 1965, marked, "Defendants not found." On November 12, 1965, an alias citation summons was issued and served on the defendant John Napilillo, returnable November 30, 1965. When the defendant failed to appear at the hearing on the citation, the court entered an order against him to show cause why he should not be attached and punished for contempt of court in refusing to attend court and be examined. Defendant appeared on February 11, 1966, and was examined as to his property. The court then entered an order finding "No property found," dismissed the citation and discharged the defendant on the ruling to show cause.

On February 21, 1966, plaintiff filed an affidavit for a wage deduction order. It recited the judgment obtained against the defendants and requested that summons and interrogatories be directed against defendant John Napilillo's employer. The latter returned the interrogatory on February 28, 1966, stating that John Napilillo was earning $531.99 monthly, $79.80 of which was subject to the wage deduction order.

On March 28, 1966, defendants petitioned the court to vacate the default judgment of October 13, 1964. They alleged in their accompanying affidavit that the prin-

cipal debt had been discharged in bankruptcy on July 10, 1964, and that the items listed in the detinue action had been scheduled and allowed as the defendants' personal exemption. They further alleged that it was this fact and their attorney's advice to ignore the summons that caused them to fail to answer the summons and subsequently to default. The petition was denied and this appeal was taken.

The issue before the court is twofold. It is whether at the time of the default judgment there existed a meritorious defense which, if known to the trial court, would have prevented the rendition of the judgment, and whether the petitioners exercised due diligence in the protection of their interests.

· Defendants contend that their obligation to Gary Acceptance Corporation was scheduled and discharged in bankruptcy; that Gary Acceptance was duly informed of the bankruptcy proceedings and accordingly knew or should have known that the personal property sought in the detinue action had been adjudicated exempt under the Bankruptcy Act; that is, found to be worth less than $400. They argue that the court should apply equitable principles to prevent injustice and that the unconscionable circumstances attendant in this case dictate the application of such equitable principles.

██ Plaintiff contends that because this is an action in detinue to recover personal property and not an action in debt, the defendants' discharge in bankruptcy is no defense. We find no merit in this contention. The gist of an action in detinue is that the defendant is wrongfully in possession of personal property which belongs to the plaintiff. There is nothing to show that the finance company had any interest in the personal property located in defendants' home. Plaintiff's claim against defendants was a personal debt that was properly scheduled and discharged in bankruptcy. To say that a creditor can avoid the consequences of having his

261

debtor's obligation discharged in bankruptcy merely by bringing suit under the label of detinue is to frustrate the purpose of the Bankruptcy Act. This is obviously what plaintiff is attempting. The discharge in bankruptcy constituted a meritorious defense that was available at the time of the default judgment and that would have prevented rendition of judgment. Plaintiff must have known that at the time the judgment was obtained.

 Plaintiff further contends that the discharge in bankruptcy is an affirmative defense which must be raised by the defendants or waived and that section 72 cannot be used to provide relief to a defendant who has failed to assert his defense. Although it is true that section 72 is not intended to relieve a defaulting party of his own mistake or negligence, it does invoke the equitable powers of the court, as justice and fairness require, to the end that one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstances. Elfman v. Evanston Bus Co., 27 Ill2d 609, 190 NE2d 348. Due diligence, like reasonable care, is a relative standard of conduct. Courts look to the attendant circumstances to judge the diligence of the defaulting party. Ellman v. De Ruiter, 412 Ill 285, 106 NE2d 350; Park Ave. Lumber & Supply Co. v. Nils A. Hofverberg, Inc., 76 Ill App2d 334, 222 NE2d 49; Detres v. Rojo, 80 Ill App2d 38, 225 NE2d 100.

 When it is clear from all the circumstances that a party has procured an unconscionable advantage through the extraordinary use of a court process, the court will excuse the defaulting party for what might otherwise be considered a lack of diligence. In such situations the ends of justice are best served by a contested hearing on the merits.

 In the present case the defendants were served with summons only one month after they had obtained a discharge in bankruptcy, notwithstanding the fact that

plaintiff's claim had been scheduled in the bankruptcy proceedings and that plaintiff knew or should have known of the defendants' discharge. Understandably confused by plaintiff's resort to a detinue action, the defendants sought legal advice and were told by their attorney to ignore the summons, presumably because he considered the use of a detinue proceeding so far beyond reason that no court, being properly advised, would enter judgment in such case.

A further factor to be taken into consideration is the plaintiff's failure to levy an execution until after the thirty-day period had expired. We have had occasion to express our views on this common strategy. Jansma Transp., Inc. v. Torino Baking Co., 27 Ill App2d 347, 354–355, 169 NE2d 829, 832. In that case we said (pp 354–355):

> "While no duty is imposed upon a party or counsel to sue out an execution promptly in order to inform a defendant of a default within the thirty-day period, yet failure to do so is a circumstance which casts a cloud upon the entire proceeding. [Citation omitted.] On a petition to vacate, the court may properly take it into account in appraising the worth of the defense to the petition."

It is our conclusion that this is a proper case for relief under section 72 and that the judgment should be reversed and the cause remanded with directions to vacate the default judgment entered on October 13, 1964.

Judgment reversed and cause remanded with directions to take such other and further proceedings as are not inconsistent with the views herein expressed.

SULLIVAN, P. J. and DEMPSEY, J., concur.