CHARLES S. WHITWORTH, Plaintiff-Appellee, *v.* W. D. MORGAN, Defendant-Appellant.

Fifth District   No. 76-233

Opinion filed March 14, 1977.

N. Y. Dowell, of Dowell & Dowell, of Mt. Vernon, for appellant.

James W. Campanella, of Peek & Gandy, of Du Quoin, for appellee.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

Defendant-appellant appeals from an order of the Circuit Court of Perry County dismissing his petition for relief as provided in section 72 (Ill. Rev. Stat. 1975, ch. 110, par. 72). Defendant's petition sought to set aside a default judgment entered against him in favor of the plaintiff-appellee on the basis that the court entering the judgment lacked jurisdiction over his person. The defendant also claimed that on equitable grounds the court abused its discretion in denying relief to him under equitable principles.

Charles S. Whitworth, plaintiff-appellee, on June 21, 1973, filed a complaint in Perry County alleging that W. D. Morgan, defendant-appellant, had on or shortly before October 25, 1971, trespassed onto plaintiff's land and cut and removed timber with a value of $2,250.54. Plaintiff asked for judgment in the amount of the value of the timber removed and an additional $5,000 in exemplary damages. The return of the summons showed personal service on defendant on June 25, 1973. The return was endorsed "Barney C. Browning" Sheriff of "Franklin" County, By "Ralph J. William," Deputy. Plaintiff's motion for default was filed and granted August 3, 1973.

An ex parte hearing was held on July 10, 1974, over 11 months after the order of default in which the issue of damages was determined. Plaintiff, the sole witness, testified that he engaged an expert from the forestry service to estimate the quantity of timber removed. From the estimate plaintiff determined a dollar amount of damages. Plaintiff stated that defendant could not have mistakenly gone onto his land in view of the area of land involved, i.e., 40 acres. On July 16, 1974, judgment was ordered in favor of plaintiff in the amounts asked in his complaint. Execution was issued on July 9, 1975, and returned on July 17, 1975, with the notation, "not found in Perry County." Subsequently, on October 21, 1975, a writ of restitution and execution was issued directing the sheriff of Franklin County to satisfy the amount of the judgment from properties of the defendant. This writ was served.

Defendant on December 4, 1975, filed a petition to set aside the default judgment and asked for leave to plead. The petition, although erroneously labeled, was a section 72 relief from judgment. The petition alleged a lack of jurisdiction on the part of the trial court to enter any judgment and in the alternative seeking the court to exercise its equitable powers and in the interest of justice reopen the default judgment.

Defendant alleged that he was never served with process and the first notice he received of the judgment was when the writ of restitution and execution was served on him in Franklin County on October 21, 1975. Accompanying the petition the defendant filed an answer to the complaint of June 21, 1973.

On February 27, 1976, defendant's amended petition for relief from judgment was filed and on that same day the petition was heard. At the hearing defendant testified that he had not been served with process and his wife and son corroborated that testimony to their own knowledge. Defendant further stated that he had received no notice, of any kind, of the proceedings involved in this case until he was served by the sheriff with a writ of restitution and execution on October 21, 1975.

Barney Browning, who was the sheriff of Franklin County in June of 1973, testified that Ralph Williams had been his deputy from 1958 to 1962 and from 1970 to 1974, but was now deceased. He stated Williams had been a dutiful officer. Sheriff Browning identified the return of service in question and observed that his name appeared on the instrument, but that he had not personally signed the document. He explained that his deputies had authority to sign his name on documents such as the one at issue, and that the office deputy, Ramona Carney (now Holman), had his authority to sign summons and office bills in June of 1973. As a matter of general office procedure during the period in question, a summons was to be served immediately. During this time Deputy Williams had the territory in which defendant's home was located. The sheriff stated that as a matter of office policy the summons was served personally by touching the body of the person to be served with the papers and then leaving the papers with the person. Finally, he testified on cross-examination that the signature on the return of service was not that of deceased Deputy Williams.

Plaintiff's witness Ramona Holman, who was employed during June of 1973 with the Franklin County sheriff's department, testified that her duties consisted of filing summons, typing statements on bills, and performing general office work. She explained the office procedure for serving summons as follows. A copy of the summons and a copy of the complaint were sent to the jail for the deputy to serve. The originals were kept in the file. She filled out the returns of service according to the information on a card returned by the deputy. When space ran out the cards themselves were destroyed. Ms. Holman could not recall whether a deputy ever signed a copy of the summons itself, but emphasized that he always signed the card. She added that the deputy did not usually come to her office and personally request her to sign the return of service.

On cross-examination Ms. Holman testified that the handwriting on the instant return of service was her own, and that Ralph Williams was not

present when she signed the paper. She stated she had no personal knowledge that Deputy Williams had actually served the papers, but presumed he had because of the information on the card she had picked up from the jail. Lastly, the record shows that Ms. Holman also signed Sheriff Browning's name on the bill the sheriff's office had sent out for service of summons and complaint in this case. On March 9, 1976, an order denying defendant's amended petition was filed and defendant appealed.

Plaintiff on September 23, 1976, filed a motion to strike issues presented for review; such motion on October 4, 1976, was ordered to be taken with the case. Defendant is appealing from an adverse order of the trial court denying him a section 72 grant of relief. Plaintiff claims that the issue of a meritorious defense is a collateral issue of a section 72 petition, therefore it cannot be an issue for review. This contention is without significance.

■■■ While many cases have held it necessary to allege facts setting out a meritorious defense and due diligence in order to invoke the court's equitable powers under section 72 of the Civil Practice Act, this court has in *Sentry Royalty Co. v. Craft,* 79 Ill. App. 2d 410, 226 N.E.2d 285, sanctioned a somewhat different standard. In *Sentry Royalty Co.* this court cited *Widicus v. Southwestern Electric Cooperative,* 26 Ill. App. 2d 102, 108-09, 167 N.E.2d 803:

> "[T]he overriding reason [in determining if a default should be reopened] should be whether or not justice is being done. * * * What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome."

Defendant in his petition and amended petition has alleged facts which taken as true support his claim that justice was not done in determining the amount of damages, both actual and exemplary. Plaintiff's motion to strike the issues presented for review is denied.

The first issue defendant raises on appeal is whether or not the court at the hearing on the section 72 petition abused its discretion in holding that the defendant had been properly served with process.

■■ Defendant contends that he was never served with process, thus the court's judgment against him is void. A sheriff's return is prima facie evidence of service and cannot be set aside merely upon the uncorroborated testimony of the person served, but only by clear and satisfactory evidence. (*Ingram v. M.F.A. Insurance Co,* 18 Ill. App. 3d 560, 309 N.E.2d 690; *Pyle v. Groth,* 15 Ill. App. 2d 361, 304 N.E.2d 499.) Every presumption in favor of the return is indulged. Defendant's own testimony is self-serving and the testimony of his wife and son falls short of the clear and satisfactory evidence needed to rebut the presumption of service.

■■ Defendant's attack on the validity of the signatures on the return of service also fails. As the testimony of Sheriff Browning and Ms. Holman reveal, Ms. Holman was fully authorized to sign the return of service in the manner she did. That the sheriff or the deputy did not himself sign the return, but instead followed office procedures whereby a special deputy was in effect directed to sign for him is not grounds for voiding the return. The return has the sanction of an official oath and to allow it to be set aside upon the sworn denial of the defendant would destroy the stability which characterizes judicial proceedings and open wide the door for temptation to perjury. We find no indication in this record that the return of service was defective. Accordingly, defendant's contention that he was not served with summons is without merit.

For this reason we do not need to consider plaintiff's contention that the court erred in overruling his objection to the testimony of all defendant's witnesses as to lack of service of process on the basis of the parole evidence rule.

■■ Defendant's second contention of error is the trial court's abuse of discretion in denying the defendant's amended petition for relief. The basis of this contention is a line of decisions by this court and the Supreme Court of Illinois holding that notice of the hearing on the assessment of damages is to be given to all parties including those held to be in default. In *Hall v. McMillian*, 8 Ill. App. 3d 448, 289 N.E.2d 669, this court reviewed a situation similar to this case. There the defendant had been served but made no appearance. Three months after an order finding the defendant in default was filed, a hearing was held on the issue of damages. No notice of that hearing was given to defendant. The default judgment was attacked by defendant in his petition for relief from judgment (section 72 of the Civil Practice Act), and the petition was granted. In *Hall* the court quoted the following statement from *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 614-15, 190 N.E.2d 348, 351:

> " * * * Although defaulted, where the action is in tort or for an unliquidated claim or amount, a defendant nonetheless has the right to be heard on the matter on damages. (*Straus v. Biesen*, 242 Ill. App. 370; *Tierney v. Szumny*, 257 Ill. App. 457; 23 I.L.P. Judgments secs. 59, 60.) 'While it has been stated broadly that a litigant by his attorney must note the progress of his case in court and is not entitled to notice except as prescribed by law, as, [sic] a general rule, except for compelling reasons, it is essential to the proper administration of justice that proper notice shall be given of steps proposed to be taken.' (66 C.J.S. Notice sec. 14, p. 652.) Again, as was cogently said in *Jansma Transport, Inc. v. Torino Baking Co.*, 27 Ill. App. 2d 347, 354, 169 N.E.2d 829, 832: 'Something more than the morals of a medieval market may reasonably be expected in the conduct of litigation.' Since

defendant did have the right to be heard on the issue of damages, we think basic fairness would require that at least informal notice should have been given of the step plaintiff proposed to take."

In affirming the order of the circuit court, this court in *Hall* stated:

"In the present case since it is undisputed that Straith was not notified formally or informally of the hearing on the assessment of damages by the trial court, the trial court was correct in vacating the default judgment as to the damages against Straith." 8 Ill. App. 3d 448, 449, 289 N.E.2d 669, 670.

■■ Another factor to be considered in defendant's appeal is the plaintiff's failure to levy an execution for fifteen and one-half months from the time the judgment was taken. Judgment was entered for the plaintiff on July 16, 1974, and execution was served on the defendant in Franklin County on October 21, 1975. This is a period of 15½ months before indirectly notifying defendant of the entry of this judgment. In *Gary Acceptance Corp. v. Napillillo*, 86 Ill. App. 2d 257, 230 N.E.2d 73, the court referred to the conduct of plaintiff's counsel after he had obtained a default judgment; the court stated (86 Ill. App. 2d 257, 263, 230 N.E.2d 73, 76-77):

"A further factor to be taken into consideration is the plaintiff's failure to levy an execution until after the thirty day period had expired. We have had occasion to express our views on this common strategy. *Jansma Transportation, Inc. v. Torino Baking Co.*, 27 Ill. App. 2d 347, 354-55, 169 N.E.2d 829, 832."

In *Howard v. Decor Home Builders*, 37 Ill. App. 3d 173, 345 N.E.2d 719, the defendants alleged in their section 72 petition that they were not notified of entry of default judgment until they were served with a writ of execution over 400 days later. Finding that this delay cast a cloud over the proceedings that could be considered in determining due diligence, that court concluded that justice and fair play required vacation of the default judgment.

Consequently, we have concluded that the trial court in the instant case did abuse its discretion by failing to vacate the default judgment. We believe that defendant's amended petition and its affidavits brought to the attention of the trial court a set of circumstances whereby the court in justice and fairness should allow defendant's petition to vacate the default judgment. Consequently, the order of the trial court dismissing defendant's petition is reversed and the cause is remanded to the trial court for the defendant to be heard on the question of damages only.

Judgment reversed and cause remanded with directions to take such other and further proceedings not inconsistent with this opinion.

EBERSPACHER and KARNS, JJ., concur.